### JACKSON v. PATTON et al. *

#### No. 4672.

Court of Appeal of Louisiana. Second Circuit.

Feb. 5, 1934.

*Rehearing denied March 2, 1934.

Ponder & Ponder, of Many, for appellants.
Boone & Boone, of Many, for appellee.

TALIAFERRO, Judge.

H. L. Patton and R. C. Showalter, defendants, were engaged in drilling a well for oil in Sabine parish, La. They employed plaintiff, W. A. Jackson, and Otis Decker, W. H. Brown, F. J. Jones, and Monroe Veuleman, to perform the class of labor on and about the well known in the oil fields as "roughnecking." Drilling operations began October 9, 1932. The well had reached a depth of 2,378 feet on December 15th, when operations were stopped. Defendants assert that they intended thereafter, when the weather conditions were favorable, to set casing for the purpose of making a test for production. Plaintiff contends that defendants abandoned the well and were endeavoring to sell it when this suit was instituted on January 24, 1933. The last four of the above-named laborers assigned to W. A. Jackson, for purposes of collecting same, their alleged claims for services against defendants. After filing and service of suit, Brown, Jones and Veuleman reached an agreement with defendants whereby their differences were amicably adjusted, and the suit, as to them, was dismissed. Prosecution of the case as to the claims of Jackson and Decker was continued. Jackson sues for labor at $7.50 per day for 57 days, less a credit of $142.50, a balance of $285. Decker sues for $205.90, being for 38 days at $7.50 per day, less a payment of $79.10. The provisions of Act No. 161 of 1932 were availed of, and the oil and gas lease itself, the well and all rigs, equipment, etc., thereon were provisionally seized by the sheriff. Plaintiff alleges that he verily believes the said lease and well thereon are about to be discontinued or abandoned, or the drilling rigs and other machinery, equipment, and structures thereto attached are about to be sold or removed from the place where said labor was performed so as to deprive petitioner of his lien and privilege, etc.

Defendants, alleging that the writ issued illegally, maliciously, and without warrant in law, and that the allegations made to secure issuance thereof were false and untrue, moved to dissolve the writ with damages. It is set up in this motion that defendants "are preparing to set casing in the well, and to drill the well in and test it, and that they have not reached the paying strata for oil in that locality; and there was no intention to abandon or discontinue the well or to remove the machinery therefrom." After trial, the motion to dissolve was overruled. Defendants then answered to the merits. The answer is a general denial, coupled with the special averment that they never agreed unconditionally to pay plaintiff or Decker $7.50 per day for their labor, but that it was definitely and distinctly agreed and understood between them and defendants, before they began their work on and about the well, that they would be paid $2.50 per day in cash, which, it is averred, was all paid before this suit was filed; and that $5 per day additional would be paid each of them "out of one-eighth of any moneys received from the sale of the oil produced from said well, and only in event the well produced oil was said sum to be paid."

Plaintiff prevailed in the lower court. Defendants appealed.

■ The first question to be determined is whether defendants were due and owing any amount to Jackson and Decker, on labor account, before this suit was instituted. If nothing was due them, then, of course, the provisional seizure of defendants' property was unwarranted. If defendants' version of the terms of compensation under which these parties worked for them is correct, and we are of the opinion that the evidence clearly supports that version, then nothing was due these two claimants when they provoked these proceedings.

Defendants operated in the oil fields of East Texas. All the laborers whose claims were united in this suit when filed had worked for them before the well in Sabine parish was commenced. The contract of employment for the well involved herein was entered into in the Isham Hotel in Longview, Tex. There were present: Both defendants, Otis Patton, A. P. Wiggins, Jackson, and Decker. All of these, except Jackson and Decker, are positive that the workmen were to be paid $2.50 per day in cash and that they agreed to accept the additional $5 from proceeds of sale of one-eighth of the oil, if found. Jackson and Decker contend that the additional $5 was due them if the well was shut down, or when finished. Jackson's testimony on this point is contradicted by that of an operator by the name of Crowder who states that Jackson worked a day for him in Texas and told him then that he was coming

to Louisiana to work for defendants for $2.50 per day cash and $5 per day in oil. It is also contradicted by the evidence of a colaborer by the name of Evans, who says that Jackson and Decker often said in his presence that the terms of the contract were as alleged by defendants. Two other laborers on the well state that they were working for $2 per day and $2 in oil. Brown, Jones, and Veuleman, whose claims were included in this suit originally, signed written contracts with defendants, after the suit was filed, in keeping with the terms and conditions of the original agreement, according to defendants' contention.

It is shown that contracts of the kind and character defendants contend was entered into between them and these laborers were common in the oil fields in Sabine parish, and that an abundance of labor could be had under such agreements. This being true, it would be unreasonable to think that any one would employ such labor at a price of $7.50 per day unconditionally. It also appears that this class of labor could be engaged for $5 per day, and less, payable in cash, without any further conditions.

Jackson admits he has been paid $2.50 per day for each day he worked on the well, and Decker has been paid $79.10 for his services of 38 days, leaving $15.60 due him. He admits that Mr. Patton sent him a check for this amount in December, some 30 days before he filed suit, but that he refused to accept it because in the face of it was written "paid in full." This refusal was not justified under the circumstances. The notation in the face of the check could have only related to payment of the cash per diem due him. This check was only intended to pay this balance.

■ We do not think defendants intended to abandon the well. Not only their own testimony negatives any inference to that effect, but all the circumstances, in our opinion, refute such inference. The well had been drilled to a depth which justified the setting of casing and the making of a test for oil. It cost around $4,500 to do this. It would have been most unnatural for them to have abandoned the well, after incurring such expense, without a test of it. No part of the machinery and equipment had been removed except some 2,900 feet of leased 4-inch drill stem. There was no further need for this at the time, and, under the contract of lease with the owners of this stem, it was due then to be returned. It was to be replaced with like quantity of 2½-inch stem, but, the weather being unfavorable and the terrain about the well and on to the nearest highway being so soft from excessive rains, it was decided by defendants to temporarily abandon work on the well until operations could be resumed and carried on at a cost not excessive.

Act No. 161 of 1932 was intended to provide an easy and inexpensive method for laborers on oil wells to protect themselves against possibility of loss of wages due them, and of enforcing the lien and privilege which secures them in their rights in this respect. This law does not, however, give a laborer the right to tie up by seizure the employer's property except when the existing facts justify resort to its beneficent provisions. It does, however, give to the laborer the right to preserve the lien and privilege which secures payment of the amount due him, by registering in the mortgage records of the parish wherein the labor has been performed, within 60 days after the last day he has worked, a notice of his claim and lien, wherein the nature and amount thereof should be clearly set forth. Section 2, Act No. 161 of 1932. When this has been done, the lien and privilege securing such claim shall prime all other liens and privileges against the oil lease, well, rigs, equipment, etc., of defendant, save taxes. This may be done even when there does not exist cause for resort to provisional seizure.

Defendants ask for damages for dissolution of the writ of provisional seizure, as follows: Attorney's fees, $100; for loss of time, humiliation, expense of trips in connection with this suit, and other damages, $500.

■■ The testimony of Mr. Patton does not make it clear that he agreed to pay his counsel $100 for his services in dissolving the writ, but rather creates the impression that the entire case, the writ and the merits, was to be handled in the lower court for this fee. There was an additional agreement for fee for counsel services on appeal, but the details of same are not disclosed. Where services are rendered under the eye of the court, the amount of same may be fixed by the court. We think that services of counsel in this case, rendered on the motion to dissolve the writ, which tied up defendants' property, in the court below and here, well worth $100, and are hereby fixed at that amount.

■ Defendants are not entitled to recover the expense of preparing to defend and of defending the case on its merits, such as for trips from Texas to Sabine parish, and cost of transporting witnesses to and from trial.

There is yet due to Decker $15.60 on labor account. Plaintiff, as his assignee, is entitled to judgment for this amount.

For the reasons assigned, the judgment appealed from is amended by reducing the amount thereof to $15.60; the writ of provisional seizure is dissolved and set aside, and plaintiff's suit is now dismissed and his demands rejected at his cost. It is further ordered, adjudged, and decreed that defendants H. L. Patton and R. C. Showalter do now have and recover judgment against the

plaintiff, W. A. Jackson, for $100, the fee of counsel for services for dissolving the writ of provisional seizure, with legal interest from date of this judgment.